**Petty v Riverside Premier Rehabilitation & Healing Ctr.**

2025 NY Slip Op 31398(U)

April 21, 2025

Supreme Court, Kings County

Docket Number: Index No. 517066/2020

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 15 of the
Supreme Court of the State of
NY, held in and for the County
of Kings, at the Courthouse, at
360 Adams Street, Brooklyn,
New York, on the 21st day of
April 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
JONYSE PETTY, as Administrator of the Estate of EVELYN
PETTY aka EVELYN M. PETTY, Deceased,

      Plaintiff,

  -against-



THE RIVERSIDE PREMIER REHABILITATION &
HEALING CENTER f/k/a KATERI RESIDENCE CENTER,

     Defendants.
-------------------------------------------------------------------------X

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

**ORDER**

Index No. 517066/2020
Mo. Seq. 4

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> 58 – 60, 61 – 68, 73 – 75, 77 – 78

Defendant Kateri Residence moves (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint. Plaintiff opposes the motion.

Plaintiff commenced this action on September 14, 2020, as administrator of Decedent's estate, asserting claims of medical malpractice, wrongful death, violations of the Public Health Law, and negligent hiring, retention, training, and supervision, in connection with the prevention and treatment of pressure ulcers.

At the outset, the Court notes that the caption of this action names "The Riverside Premier Rehabilitation & Healing Center <u>f/k/a</u> Kateri Residence Center" as a single defendant. 150 Riverside LLC ("Riverside") filed an Answer on December 8, 2020. Kateri Residence filed a

1

[* 1]

separate Answer on December 15, 2020. All parties thereafter referred to the two entities as "co-defendants," and only Kateri Residence has moved for summary judgment herein.

Decedent was admitted to a residential nursing home facility from October 3, 2006 until November 9, 2018. It is not contested by any party that the moving defendant Kateri Residence owned and controlled this nursing home until August 30, 2013, at which time it was "sold" to Riverside "to handle all patient care thereafter." On this basis, Kateri Residence's moving papers and expert affirmation only address treatment and care provided prior to August 30, 2013. They primarily focus on her treatment from March 2012 (the earliest date noticed in the Complaint and Bill of Particulars) through August 2013.

In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (*Rosenzweig v Hadpawat,* 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (*Martinez v Orange Regional Med. Ctr.,* 203 AD3d 910, 912 [2d Dept 2022]). "A defendant's failure to satisfy this prima facie burden requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Ciceron v Gulmatico,* 220 AD3d 732, 734 [2d Dept 2023]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig,* at 652 [2d Dept 2024] [internal quotation marks and citations omitted].)

2

[* 2]

However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023]).

In support of their motion, Kateri Residence submits an expert affirmation from Lawrence Diamond, M.D. ("Dr. Diamond"), a licensed physician board certified in family medicine and geriatric medicine.

Dr. Diamond opines that the care rendered by Kateri Residence was "at all times in accordance with good and accepted medical practices and did not depart from accepted standards of care." He states that Decedent was properly assessed as "low risk" for pressure ulcers (Braden Score 23) at the time she was living at Kateri Residence from 2006-2013, noting that throughout this period she was ambulatory – able to sit and walk on her own – and thus did not require preventative interventions such as turning and repositioning or a specialty mattress. He also states she was not incontinent and did not require diapers at any time during the Kateri Residence period, based on testimony and the medical record. He notes that even in 2016 (at least two years after the change in management to Riverside), Decedent was mobile and evaluated as low risk for pressure ulcers. He opines that Decedent's condition and risk for pressure ulcers was unchanged until approximately 2017, when Decedent's daughter testified that she needed assistance getting out of bed and she was first documented to have pressure ulcers. Thus, he opines that there were no departures from the standard of care by Kateri Residence in assessing her risk for pressure ulcers or providing appropriate care plans when they controlled the facility.

Dr. Diamond also opines that Kateri Residence health providers and staff performed appropriate skin checks throughout her admission from October 2006-August 2013. He notes

3

[* 3]

that "regular skin checks" were documented in 2012 and 2013, and the records consistently show she had no pressure ulcers.

On the issue of proximate causation, Dr. Diamond states again that Decedent "never developed any ulcers during her time at Kateri Residence before it was sold to The Riverside on August 30, 2013," nor did she ever develop sepsis during that time. Decedent's daughter testified that she first noticed pressure wounds on Decedent's feet in early 2017, when she had "none" before. A stage II buttocks pressure injury was first documented in Riverside's chart when she was evaluated by a wound care specialist in July 2017. Dr. Diamond opines these claimed injuries developed entirely while Decedent was under the care of Riverside, three years after Kateri Residence's treatment period. Thus, he opines that no alleged departures from the standard of care by Kateri Residence were the proximate cause of the development or worsening of these pressure ulcers.

Based on the Court's evaluation of the expert submissions and medical record, Kateri Residence has established prima facie entitlement to summary judgment. It is Kateri Residence's position that their agents and employees were in control of Decedent's care *only* prior to the August 2013 sale to Riverside, and this fact is not contested by Plaintiff or co-defendant Riverside. Kateri Residence's expert has sufficiently established that Decedent was appropriately assessed as low or mild risk during the Kateri Residence period, and that she did not require interventions such as turning/positioning protocols or specialty devices at that time.

Moreover, the record is clear that Decedent developed <u>no</u> pressure ulcers or deep tissue injuries during the Kateri Residence period. Indeed, there is no evidence of any pressure ulcers, decubitus ulcers, deep tissue injuries, or similar wounds prior to 2017, over two years after the change in ownership to Riverside. Thus, Kateri Residence has met their prima facie burden of

[* 4]

establishing that no alleged departures by Kateri Residence could have proximately caused these injuries.

For the same reasons above, the movant has also established entitlement to summary judgment as to the asserted violations of the Public Health Law. The expert made a prima facie showing that Kateri Residence "exercised all care reasonably necessary to prevent and limit the deprivation and injury to the patient," and that "even if any regulations were violated, none of the alleged injuries was proximately caused by these violations" (*Gold v Park Ave, Extended Care Ctr. Corp.,* 90 AD3d 833, 834 [2d Dept 2011]).

In opposition, Plaintiff submits an expert affirmation from a licensed physician [name of expert redacted], board certified in surgery and vascular surgery. Plaintiff has presented a signed, unredacted version of this affirmation to the Court for *in camera* inspection. The Court notes that while the movant argues in reply that this expert is not qualified because he failed to provide a curriculum vitae, the same applies to movant's own expert submission. The Court shall consider all submitted expert opinions.

Plaintiff's expert opines that Kateri Residence departed from the standard of care by "failing to adequately assess the patient's high risk for developing deep tissue injuries and decubitus ulcers," failing to institute proper preventative measures such as "consultations, turning and positioning, and pressure devices for bed and chair," and failing to provide appropriate skin checks.

Plaintiff's expert opines that Decedent should have been considered "high risk for skin breakdown on the first day of admission" in 2006, relying on statements in the medical record that she utilized a walker and wheelchair, and she needed "limited" assistance with ambulation and transfers. The expert notes that her comprehensive care plan included skin moisturizing and

5

[* 5]

regular skin assessments but asserts there is insufficient documentation that care regimen was being performed.

Plaintiff's expert disputes that Decedent was consistently "low risk" for pressure ulcers during this period, citing an assessment from April 2012 which indicated her care plan was updated for a pressure-reducing bed and turning/repositioning assistance. The expert notes that in June 2013, shortly before the transfer to Riverside ownership, Decedent's Braden Scale score was updated to 15 for "mild risk," but again opines that there was insufficient documentation that the stated interventions were made.

Plaintiff's expert further opines that Kateri Residence failed to "timely and properly implement a comprehensive nutritional regimen," which they assert caused her to lose approximately 20 pounds during her residency and placed her at higher risk of skin breakdown.

On the issue of proximate causation, Plaintiff's expert disputes that Decedent never developed any pressure ulcers or skin problems during the Kateri Residence period. Specifically, they refer to a purple "discoloration" on her left thigh which appeared in February 2012. Additionally, Plaintiff's expert states that Kateri Residence's improper risk assessment and lack of preventative measures were a "blueprint" for the later treatment that was provided by Riverside from September 2013-November 2018, and therefore proximately caused the development of her pressure ulcers under Riverside's care.

"When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution" (*Stewart v. North Shore Univ. Hosp. at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022] citing *Russell v. Garafalo,* 189 A.D.3d 1100, 1102 [2d Dept. 2020]). However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise a triable issue of fact" (*Wagner v Parker*, 172 AD3d 954, 966 [2d Dept. 2019]). Expert opinions

6

[* 6]

which "fail to articulate the applicable standard of care," only assert vaguely that a higher standard should have been implemented, are conclusory and insufficient to raise an issue of fact (*see Nelson v Lighter,* 179 AD3d 933 [2d Dept 2020], citing *Webb v Albany Medical Center,* 151 AD3d 1435, 1437 [3d Dept 2017]).

Plaintiff's expert fails to raise any genuine, triable issues of fact on the alleged departures from the standard of care by Kateri Residence. Despite citing to alleged inconsistencies in the chart regarding her mobility, the expert fails to articulate a standard of care for proper Braden Scale assessment. The expert merely states in a conclusory manner that Decedent should have been considered "high risk," which is not supported by the record. The expert also cites to alleged inconsistent documentation of her skin checks and preventative turning in 2012-2013 but does not articulate a standard for the frequency of skin checks or interventions.

Even if issues of fact remained on these alleged departures, Plaintiff has crucially failed to raise any issue of fact that Kateri Residence's alleged improper risk assessment, pressure ulcer prevention measures, or nutritional plan *proximately caused* Decedent's pressure ulcers which appeared nearly three years later. The contention of Plaintiff, through their expert, that Riverside followed the same risk assessment and care plan of Kateri Residence, and thus their alleged departures "carried into" her treatment in 2016-2018 – when the actual pressure ulcers developed – is conclusory and unsupported by the record. It is not disputed that Riverside had its own medical providers and staff who were responsible for performing assessments and directing Decedent's treatment after the August 30, 2013 sale.

Plaintiff's only citation to any skin impairment during the Kateri Residence period is a reference on February 24, 2012 to a "discoloration to [left] inner thigh, purplish in color, approximately 2cm x 2cm" with "no swelling or redness." The same injury is later referred to as

7

[* 7]

a "bruise to left inner thigh," and was addressed in the movant's papers as arising from a "fall." It is clear on its face that this was not a pressure ulcer or causally linked to her claimed injuries.

Due to the elimination of any issues of fact as to whether Kateri Residence's alleged departures and violations proximately caused Decedent's injuries, summary judgment must be granted to Kateri Residence on all claims herein.

As Kateri Residence is named in the caption only to the extent of the "formerly known as" name of remaining defendant The Riverside Premier Rehabilitation & Healing Center, the caption need not be amended. Any claims against Kateri Residence as a separate entity, and all claims arising before the August 2013 sale, are hereby dismissed.

Accordingly, it is hereby:

**ORDERED** that Kateri Residence's motion (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them, is **GRANTED.**

The Clerk shall enter judgment in favor of KATERI RESIDENCE.

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

8

[* 8]